```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


CALDERA PHARMACEUTICALS, INC.,       )
                                     )
                 Plaintiff,          )
                                     )
     v.                              )
                                     )   No. 10 C 6347
LOS ALAMOS NATIONAL SECURITY, LLC,   )
UCHICAGO ARGONNE, LLC, EDEL MINOGUE, )
GEORGE HAVRILLA, DUNCAN MCBRANCH,    )
LAURA BARBER, SAM BORKOWSKY and      )
BRUCE COTTRELL,                      )
                                     )
                 Defendants.         )
```

## MEMORANDUM OPINION AND ORDER

In September 2005, plaintiff Caldera Pharmaceuticals, Inc. ("Caldera") entered into a patent licensing agreement ("license agreement") with the Regents of the University of California, which later assigned the license agreement to defendant Los Alamos National Security LLC ("LANS"). According to Caldera, the license agreement gave it exclusive rights to certain patents and patent applications pending in the United States and foreign countries. Caldera claims that LANS completely disregarded the license agreement's exclusivity provision. The first amended complaint states that LANS, Uchicago Argonne LLC ("Argonne") and the other individual defendants entered into a conspiracy to damage Caldera by improperly allowing a

transfer of Caldera-licensed technology to third-party competitors. LANS has moved to dismiss or transfer venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, to transfer this action to the District of New Mexico for the convenience of the parties and witnesses and in the interests of justice pursuant to 28 U.S.C. § 1404(a).

On January 19, 2011, Caldera informed the court that the "parties have stipulated that the claims against Los Alamos and the Individual Defendants can be heard in New Mexico . . . . Plaintiff respectfully requests that this Court transfer those claims it has raised against LANS and the Individual Defendants to New Mexico for resolution." Dkt. No. 44, ¶ 6. Since then, Argonne has indicated that it, too, will agree to transfer to New Mexico, but only under a reservation of its right to argue that it is not subject to personal jurisdiction in New Mexico. Briefing in this matter makes clear that Caldera, despite its statement to the court, now opposes transfer of any part of the case to New Mexico.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). For venue to

be proper under § 1391(b)(2), a majority of the events giving rise to the claim need not occur in the venue, only a "substantial" part. *See Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970, at *7 (N.D. Ill. Nov. 1, 2002). "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Chemical Waste Mgmt. v. Sims*, 870 F. Supp. 870, 875 (N.D. Ill. 1994). The requirements of § 1391(a)(2) "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Consol. Ins. Co. v. Vanderwoude*, 876 F. Supp. 198, 200-01 (N.D. Ind. 1995).

With respect to the breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with prospective contractual relations, civil conspiracy and declaratory and injunctive relief claims, I find that venue is proper. In this case, Caldera alleges that Argonne, which is in Illinois, conspired with LANS and others to deprive Caldera of the exclusive use of the technology licensed under the license agreement. Caldera alleges that Argonne was aware of LANS's contractual agreement with Caldera, and took steps to induce LANS to

breach that contract. Caldera further alleges that LANS breached its agreement with Caldera when Argonne and LANS entered into a partnership to disclose, use and sell licensed inventions and services to Caldera. Thus, given Argonne's involvement in these claims, a substantial part of the events or omissions giving rise to Caldera's claims against LANS occurred in this district and venue is proper.

However, I do not find that venue is proper with respect to the fraudulent inducement and fraudulent concealment claims. These claims center on what LANS told (or failed to tell) Caldera at the time the parties entered into the license agreement. Caldera attempts to argue that at the time of contracting in 2005 LANS knew of Calera's ties to Illinois and must have been aware that any tortious actions would harm Caldera in Illinois, but that assertion is directly contradicted by Benjamin Warner, Caldera's CEO, in an affidavit from 2010. Warner averred that Caldera's business was run out of its Los Alamos, New Mexico headquarters. Caldera overreaches in arguing for venue for these two claims, as no "substantial" part of the events underlying the fraudulent inducement and concealment claims occurred in Illinois.

4

Turning now to LANS's request to transfer this case to the District of New Mexico, I note that in deciding whether to transfer this case, two statutory sections apply here. 28 U.S.C. § 1404 governs claims over which a court has proper venue, while § 1406 governs claims over which there is improper venue.  I address the claims for which there is proper venue first.  A federal district court, in which a suit is filed with proper venue, may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404 allows transfer only if venue and personal jurisdiction are proper in the transferee forum. *See Hoffman v. Blaski*, 363 U.S. 335 (1960).

LANS asserts that venue would be proper in the District of New Mexico, given the fact that the crux of this dispute, and the vast majority of the parties, are centered in New Mexico.  The only argument raised in response is Caldera's assertion that Argonne might not be subject to personal jurisdiction there.  Having reviewed the matter, I conclude that Argonne would, in fact, be subject to personal jurisdiction in New Mexico.

The New Mexico long-arm statute, N.M. Stat. Ann. § 38-1-16A, "extend[s] as far as the [federal] constitution allows." *Santa Fe Technologies v. Argus Networks*, 42 P.3d 1221, 1228 (N.M. Ct. App. 2001). For personal jurisdiction over a nonresident defendant to exist in New Mexico, "a plaintiff must allege an occurrence that falls within the long-arm statute, and the court must find the requisite minimum contacts to comport with due process." *Id*. Importantly, the New Mexico state courts and the Tenth Circuit have recognized that a claim of conspiracy may be the basis for personal jurisdiction of co-conspirators outside the territorial limits of the court. *See Santa Fe Technologies*, 42 P.3d at 1233-34 (stating that "a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state"); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060 (10th Cir. 2007) ("The existence of a conspiracy and acts of a co-conspirator within the forum may in some cases subject another co-conspirator to the forum's jurisdiction."). Caldera alleges that Argonne conspired with LANS, a New Mexico corporation, to defraud and deceive Calera, which also is a New Mexico

6

corporation. Caldera has put forth a sufficient showing by alleging that Argonne entered into a conspiracy with LANS to damage Caldera and its business relationships (and future business relationships) by improperly allowing a transfer of Caldera-licensed technology to third-party competitors, using Argonne as a conduit or surrogate for LANS. *See* First Am. Compl. ¶ 72. The ultimate injury resulting from Argonne's alleged conduct occurred in New Mexico because Caldera's headquarters is located in New Mexico. *See Applied Capital, Inc. v. Gibson*, No. CV05-98JB/ACT, 2007 WL 5689323, at *15 (D.N.M. Sept. 30, 2007). Thus, relying on those cases cited above and in light of the allegation that Argonne conspired with a New Mexico company to injure a New Mexico company in New Mexico, I conclude that the District of New Mexico would have specific jurisdiction over Argonne. Argonne is alleged to have "purposefully directed" its improper activities at a New Mexico corporation while in league with another New Mexico corporation. Thus, the claims against Argonne arise out of its contacts with New Mexico. *See Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Argonne had "minimum contacts" with the forum state and exercising jurisdiction over Argonne would not offend traditional notions of fair play and substantial justice.

*Melea*, 511 F.3d at 1070 ("[A] co-conspirator's presence within the forum might reasonably create the "minimum contacts" with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum[.]"). Furthermore, I see no reason why jurisdiction in New Mexico would be unreasonable.

Turning now to the convenience of the parties and witnesses, I find that these considerations support transfer. Admittedly, plaintiff's choice of forum deserves some deference, although it is afforded less weight when it is not the plaintiff's home forum.[1] *See Rudich v. Metro Goldwyn Mayer Studio, Inc.*, No. 08-cv-389-bbc, 2008 WL 4691837, at *4 (W.D. Wisc. Oct. 22, 2008). Here, Caldera and LANS both are New Mexico corporations, and five out of the six individual defendants reside in New Mexico (the sixth resides in neither New Mexico nor Illinois). Only Argonne is in Illinois. Caldera attempts to make much of

---

[1] As explained in further detail *infra*, I am not convinced that Caldera's ties to Illinois are such that this forum could be considered its "home" forum. As noted, Caldera is not even registered to do business in Illinois, and it is not clear what, if any, part of its business is done out of its Chicago office.

the fact that it now has an "office" here in Chicago (which happens to be the address of Gregg Rzepczynski, Caldera's attorney).  In a 2010 affidavit submitted in another lawsuit, Warner averred that Caldera's principal place of business was in New Mexico and that Caldera would not anticipate being haled into court in Illinois.  Warner disavows those statements, claiming that Caldera has more of a presence in Illinois now and even has two of its three officers (which include Rzepcaynski) based in Illinois.  Warner goes on to aver that Caldera has a bank account in Illinois and maintains a storage facility in Illinois.  I am skeptical, however, of Caldera's claims regarding its Chicago office as, notably, Caldera is not actually registered to do business in Illinois.  Further, Caldera fails to explain how much of its business is actually done out of its Chicago office.  While Caldera has argued that Illinois is a more convenient forum for it, it seems likely that New Mexico, as it is the headquarters of the company, would also be convenient.  While transfer will likely inconvenience Argonne, Argonne has indicated that it does not oppose transfer.  Further, LANS argues that it would be severely inconvenienced if this case were to stay in this forum.  It claims that the disruption caused to its

employees could directly impact the work it does for the United States Department of Energy and National Nuclear Security Administration. In addition, the five individual defendants, who reside in New Mexico, would be inconvenienced if forced to travel to Illinois. The sixth, who resides in Rhode Island, is a neutral factor and travel would be required to either forum.

Looking at potential witnesses, there are a significant number of witnesses located in New Mexico. LANS states there are at least forty-one LANS-affiliated witnesses and fifteen non-party witnesses located in New Mexico. And Caldera, in the California state court action which preceded this case, identified forty-six witnesses in Los Alamos, New Mexico (and seventeen others listed in neither New Mexico nor Illinois). In response, Caldera posits that a factor in support of denying transfer is the fact that some of the third-party competitors, while headquartered elsewhere, are registered to do business in Illinois, and thus would be subject to this court's subpoena power. Caldera, though, fails to put forward any evidence that these companies are not subject to jurisdiction in New Mexico. Further there is no evidence that these parties would refuse to testify at a trial in this matter. While the presence of these four

parties in Illinois (the other six competitors apparently do not reside in Illinois) favors this forum to some extent, I conclude that New Mexico is clearly a more convenient forum for almost all the parties and almost all the witnesses.

Turning to the interest of justice factors, I must consider factors which relate to the "efficient administration of the court system," such as "trying related litigation together, ensuring a speedy trial, and having the trial before a judge who is familiar with the applicable law." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009) (citing *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). The relative speed inquiry is a wash, as the time to trial in both districts is essentially the same. While Caldera claims that its documents are stored here in Illinois, LANS's documents and evidence are located in New Mexico. By far, the vast majority of the conduct alleged in the first amended complaint took place in New Mexico. The license agreement, which is at the heart of this lawsuit, was negotiated and executed in New Mexico. Any steps taken by LANS which breached the license agreement likely took place in New Mexico, and any actions taken by the six individual defendants also likely took place in New Mexico. New Mexico

clearly has a strong interest in resolving a dispute between, primarily, two New Mexico companies. Given this, Illinois's interest in resolving this disputes is not as strong. With respect to applying the applicable law, the license agreement has a California choice-of-law provision, so that factor is neutral. To the extent Illinois law would apply to the other claims, that would weigh slightly in favor of an Illinois forum, although I am confident that a New Mexico judge could certainly handle any questions of Illinois law that might arise. In the end, having weighed all these considerations, I find that New Mexico is the most appropriate forum to resolve the parties' dispute.

Finally, with respect to the two claims over which venue is not proper here, I also conclude that transfer to New Mexico is appropriate. Under 28 U.S.C. § 1406(a), I may either dismiss the claims for improper venue or I may transfer the case to a forum where venue is proper. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the best interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Seventh Circuit has noted that "' the interest of justice' is not a definite

standard," and that a district court therefore enjoys broad discretion to transfer a case. *See Cote v. Wadel*, 796 F.2d 981 (7th Cir. 1986). In order that this case may be tried together, I conclude that transfer to the District of New Mexico is in the interest of justice.

In light of the above, LANS's renewed motion to dismiss or transfer venue pursuant to Fed. R. Civ. Proc. 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, transfer venue pursuant to 28 U.S.C. § 1404(a) [79] is granted to the extent described herein. The clerk of the court is directed to transfer this case, in its entirety, to the District of New Mexico.

              **ENTER ORDER:**

              _____
              **Elaine E. Bucklo**
             United States District Judge

Dated:    January 26, 2012